**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 25, 2024**

# In the Court of Appeals of Georgia

A24A1191. ALBRIGHT et al. v. TERMINAL INVESTMENT CORPORATION.

HODGES, Judge.

Purcell Albright, Sr. and Patricia Albright appeal from the trial court's order granting summary judgment on their negligence and related claims against Terminal Investment Corporation d/b/a TICO ("TICO"). The Albrights argue that the trial court erred in granting summary judgment because the evidence presented a fact issue as to whether TICO's negligence proximately caused their injuries. We agree and therefore reverse the trial court's judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the

evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

(Citation omitted.) *Evans v. Med. Center of Central Ga.*, 359 Ga. App. 797 (860 SE2d 100) (2021). Indeed, "summary judgment is improper if [the] opposing party produces even slight evidence giving rise to a triable issue of material fact[.]" (Citation and punctuation omitted.) Id. at 802; accord *Peach Blossom Dev. Co. v. Lowe Elec. Supply Co.*, 300 Ga. App. 268, 269 (684 SE2d 398) (2009) ("To defeat a motion for summary judgment the respondent does not have to present conclusive proof to rebut the movant's evidence; if the respondent produces or points to any specific evidence, even slight, in the record giving rise to a triable issue of material fact, then summary judgment must be denied.") (citation and punctuation omitted).

So viewed, the record shows that in May 2019, Purcell[1] was acting in the course and scope of his employment while driving a truck that was owned and maintained by TICO. Prior to driving the truck, Purcell performed a pre-trip inspection and "didn't

---

[1] For clarity, we will refer to the parties by their first names.

see any visible issue with the truck." The trailer was already connected. During his drive, Purcell attempted to make a u-turn and the truck jack-knifed into the trailer he was pulling. According to Purcell, "[i]n the process of turning, something happened that caused [him] to feel off balance. . . . [I]nstead of staying in a round curve, [the truck] kind of d[id] a dip" and it seemed like the trailer was pushing the truck. When Purcell realized the truck was out of control, he "tried to take [his] foot off the accelerator, but the positioning or something, [his] balance or whatever, would not allow [him] to remove [his] foot from the accelerator." Purcell testified that "[w]hatever went wrong caused [him] not to be able — it either shifted [his] weight or whatever. But realizing the truck was out of control, . . . [his] foot was wedged on the accelerator" and he could not move it to the brake. There was nothing he could do to take his foot off the accelerator because of his positioning; he was off balance because of the way that the truck turned and his body weight was pushing down "like [he] was standing on one foot." Purcell had "no idea" what caused him to lose control of the truck, but suggested that his inability to remove his foot from the accelerator might have been "the cab coming up or whatever."

Purcell's truck collided with another truck, and Purcell was ejected through the driver's side window of his truck. Purcell sustained injuries to his shoulder, neck, back, head, and knee, and he was out of work for 16 months.

The Albrights' expert testified[2] that TICO employees failed to latch the cab of the truck closed, and the cab of the truck rose prior to impact, causing the trailer to become lodged under the cab. In the expert's opinion, while Purcell's turning maneuver caused the truck cab to make contact with the trailer and jack knife, the raised cab contributed to cause the jack knife. In his report, the expert summarized his opinions as follows: (i) the cab latches were not engaged at the time of the incident; (ii) "[t]he cab raised further from the already elevated position in response to contact with the trailer[, and t]his contact allowed the trailer to wedge underneath the corner of the cab during the turning maneuver thereby locking the vehicle into the turn radius through the interaction of the cab and the trailer"; (iii) "[t]he forces on Mr.

[2] We note that the trial court did not rule on the parties' pending motions to exclude expert testimony in this case, and TICO argues that the court erroneously accepted testimony of the Albrights' expert without ruling on its motion to exclude it. On remand, the trial court will be required to rule on the parties' motions. In the meantime, however, testimony from the Albrights' expert is in the record and was relied on by the trial court. We therefore will also consider it at this juncture. This opinion in no way addresses the merits of the parties' motions to exclude expert testimony.

Albright's body as a result of the turn with the trailer and cab locked together . . . restricted [his] ability to disengage the throttle in the turn, as his weight was directed to the outer radius of the turn and subsequently to his foot on the throttle"; and (iv) "[i]f the elevated cab had not further lifted in response to contact with the trailer, which created the connection between the cab and the trailer, a steering maneuver to counteract the contact would have resulted in reduced centrifugal force and a deceleration of the vehicle to provide Mr. Albright with the ability to disengage the throttle and apply the brake." In addition, the expert deposed that Purcell may have been able to avoid the accident altogether if the issue with the cab latch did not exist.

Purcell filed a simple negligence suit against TICO in May 2019, asserting claims for damages and OCGA § 13-6-11 attorney fees. The complaint was amended to include Patricia Albright, Purcell's wife, as a plaintiff and assert a claim for her loss of consortium.[3] TICO subsequently moved for summary judgment and, following a hearing, the trial court granted TICO's motion. In support of its finding that there is "no question of material fact in the record regarding causation[,]" the trial court concluded:

---

[3] Purcell moved to add Patricia as a party, and the trial court granted the unopposed motion.

> [I]t is undisputed that Mr. Albright's driving while attempting a u-turn was the sole proximate cause of the vehicle initially going out of control; stated differently, there is no evidence or argument that TICO's negligence caused Mr. Albright to make the u-turn or to initially lose control of his jockey truck.

According to the trial court, "there is no evidence to establish that but for TICO's negligence, Mr. Albright would not have been injured or that he would not have been as badly injured. Since Mr. Albright must introduce some evidence in this regard in order to prevail on his claims and survive summary judgment on these issues, his claims now fail." This appeal followed.

In related enumeration of errors, the Albrights contend that the trial court erred in: (1) entering summary judgment to TICO on Purcell's negligence claim; (2) entering summary judgment to TICO on Patricia's derivative claim for loss of consortium; and (3) entering judgment in favor of TICO on the Albrights' attorney fee claim under OCGA § 13-6-11. The Albrights' arguments highlight questions of material fact concerning the cause of the collision. After reviewing the record, we reverse the grant of summary judgment to TICO.

6

1. "To prove negligence, a plaintiff must establish four elements: duty, breach of that duty, causation, and damages." *Wang v. Dukes*, 368 Ga. App. 661, 664 (1) (890 SE2d 283) (2023). Georgia law strongly disfavors removing the issue of negligence from a jury:

> Negligence is not susceptible to summary adjudication except where the evidence is plain, palpable, and indisputable that the respondent cannot present any slight evidence on each essential element of the action in rebuttal to create a jury issue. Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.

(Citation and punctuation omitted.) *Barrett v. Farrior*, 371 Ga. App. 714, 716 (1) (a) (902 SE2d 697) (2024). "[I]t is well established that questions regarding causation are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases." (Citation and punctuation omitted.) *Central Ga. Women's Health Center v. Dean*, 342 Ga. App. 127, 134 (1) (b) (800 SE2d 594) (2017). "If reasonable minds can differ on the cause of the injury, the case is not plain, palpable, and indisputable and it should go to the jury." (Citation omitted.) *Ga. Dept. of Human Resources v. Bulbalia*, 303 Ga. App. 659, 663 (2) (694 SE2d 115) (2010). The facts in the record before us are not so

7

"clear, plain, palpable and undisputed" so as to warrant summary judgment in favor of TICO as to liability.

First, there is some evidence in the record that TICO employees failed to properly latch the truck's cab closed after they inspected and serviced the truck and that this failure caused the cab to raise. In fact, the factual background in the trial court's order notes that, construed in favor of the Albrights, the evidence shows that TICO employees "failed to fully latch the jockey truck's cab closed [and t]his allowed the cab to rise up slightly while the vehicle was being operated[.]" Indeed, the president of TICO acknowledged that the TICO jockey truck service manual cautioned mechanics and service personnel to "[e]nsure the cab latches are secured and locked." The Albrights' expert, however, deposed that the cab was not securely latched. He based this opinion in part on the fact that the latch pins would have broken on impact if they had been properly closed, and there was no damage to the latch pins or latch mechanism after this incident. According to the expert, the cab of the truck rose prior to impact, and the trailer got lodged under the cab.

Moreover, Purcell and other witnesses testified that the cab rose up while the truck was being operated prior to the collision. According to the police report

8

following the incident,[4] Purcell told police that he was making a u-turn with the truck "when the cab came up" and he collided into another truck. The other truck driver involved in the incident told police that he was traveling down the road when he saw Purcell's truck "with its cab raised turning towards him."

Second, although the trial court concluded that "Mr. Albright's driving while attempting a u-turn was the sole proximate cause of the vehicle initially going out of control" and "there is no evidence to establish that but for TICO's negligence, Mr. Albright would not have been injured or that he would not have been as badly injured[,]" these conclusions cannot be reconciled with the evidence when it is viewed

---

[4] The police report was attached to TICO's motion for summary judgment as Exhibit 3. TICO did not move to strike this exhibit from the trial court's consideration of the summary judgment motion and, therefore, has waived any objection to consideration of evidence in the report at this juncture. See *Guise v. Leoni*, 366 Ga. App. 659, 663 (a) (883 SE2d 892) (2023) (deeming objection regarding authentication of exhibits waived because party did not object to them or move to strike them from the trial court's consideration of the summary judgment motion); accord *Williams v. Durden*, 347 Ga. App. 363, 367, n. 2 (819 SE2d 524) (2018) ("Because Durden did not object to the aforesaid records submitted by Williams in opposition to summary judgment, Durden waived any objection to the exhibits on hearsay or authentication grounds."); see also *Glisson v. Morton*, 203 Ga. App. 77, 78 (2) (416 SE2d 134) (1992) ("We also note that plaintiff has waived her right to object to these excerpts on appeal not only because she failed to raise this objection in the court below, but because she herself relied on excerpts from her personnel file by attaching certain of the documents to her brief and affidavit filed in opposition to defendant's motion.") (citation omitted).

in a light most favorable to the Albrights.[5] Specifically, there is some evidence in the record that the raised cab — resulting from the failure to properly latch it closed — caused or contributed to cause the collision. The Albrights' expert opined that Purcell may have been able to avoid the accident altogether if the issue with the cab latch did not exist. The expert specifically testified that he could say with a "reasonable degree of engineering certainty" that because of the latch issue "the cab navigated further over the trailer than it should have and . . . created the connection[;]" if the cab had been latched, there likely would have only been "a bump to the back of the cab rather than going under it." According to the expert, in his engineering opinion, the raised cab contributed to cause the truck to jack knife because once the connection was made between the truck and the front of the cab, that action "disallowed" Purcell from mitigating or taking any countermeasures to correct the jack knife. The expert testified that the cab raising and wedging on top of the trailer made the turning radius tighter,

---

[5] Similarly, the trial court's statement in its order that "Mr. Albright concedes that a sharp u-turn and resulting jack knife caused him to lose control of the truck, not the improperly unlatched cab" is incorrect and, in fact, the trial court in the next sentence correctly noted that "Mr. Albright contends that TICO's negligent failure to latch the cab was a proximate cause of the collision because it resulted in Mr. Albright being unable to react to the emergency driving situation he faced, such as by removing his foot from the accelerator, or by braking, or by steering out of the jack knife."

which caused more force, and "then there really is no ability to steer out of it if it's got a connection at the cab." Indeed, Purcell testified that there was nothing he could do to take his foot off the accelerator because of his positioning; he was off balance, his body weight was pushing down, and his foot was wedged on the accelerator.

Moreover, the record includes additional evidence that the raised cab caused or contributed to cause the collision. According to the police report attached to TICO's motion for summary judgment, a driver who witnessed the incident reported that he saw Purcell's truck turning around "and the cab of the jockey truck rose up *causing* him to lose control and hit" another truck. (Emphasis supplied.) The police report further noted that another witness stated that he likewise saw Purcell's truck make a u-turn "and the cab of the jockey truck rose up and the driver lost control of the jockey truck." And Purcell himself testified that "[w]hatever went wrong *caused me* not to be able [to stop the truck] — it either shifted my weight or whatever. But . . . my foot was wedged on the accelerator." (Emphasis supplied.)

TICO argues that the flash drive video contradicts the witnesses' testimony regarding the timing of the raised cab, but even the trial court during the hearing on TICO's motion for summary judgment stated, "I'm not sure it's easy to tell [from the

video] whether the cab dislodges because it jammed into the side of the chassis when the turn was too sharp or whether the cab raised somehow and that caused him to lose control." And in its order, the trial court found that "[t]he video fails to conclusively establish" "anything argued by TICO, including fault . . . as a matter of law." While the trial court's statements are not evidence, given the witnesses' testimony and evidence in this case, it appears that any discrepancies between the witnesses' testimony and the flash drive video evidence would be for a jury to resolve. See generally *Scott v. Harris*, 550 U. S. 372, 380 (III) (A) (127 SCt 1769, 167 LE2d 686) (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by" a videotape of the incident, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); cf. *Travitt v. Grand Union Co.*, 207 Ga. App. 810, 811-812 (1) (429 SE2d 309) (1993) ("It was the jury's responsibility in the face of the conflicting testimony to determine who was negligent and whose negligence proximately caused the collision.").

In short, the jury could find based on the evidence in the present record that the unexpected event of the cab rising up because it was improperly latched and the resulting force of that event — rather than solely Purcell's attempt to make a simple

u-turn — caused him to lose control of the truck or, at the very least, made him unable to take countermeasures to correct any jack knife, leading to the collision and his injuries.[6] Because Georgia follows the comparative law doctrine and the present record contains some evidence that TICO may have been at least partially at fault for the incident, summary judgment is not appropriate at this juncture. See *Bridges Farms v. Blue*, 267 Ga. 505 (480 SE2d 598) (1997) ("Under the comparative-negligence doctrine of this state, a plaintiff whose negligence is less than that of the defendant is not denied recovery although his damages shall be diminished by the jury in proportion to the degree of fault attributable to him.") (citations and punctuation omitted); see also OCGA § 51-12-33 (noting that a jury must apportion fault when awarding damages).

> We must remember that it is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its

---

[6] We take this opportunity to point out that the trial court's comment, devoid of any supporting authority, that Purcell's assertion of causation "would have required expert testimony" is not universally true. See, e.g., *Cowart v. Widener*, 287 Ga. 622, 626-627 (2) (a) (697 SE2d 779) (2010) (concluding that generally simple negligence cases do not require expert evidence on causation unless medical questions relating to causation are involved).

function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

(Citation and punctuation omitted.) *The Kroger Co. v. Schoenhoff*, 324 Ga. App. 619, 622-623 (751 SE2d 438) (2013). "The sole function of the court on a motion for summary judgment is . . . to determine whether there exists a genuine issue of material fact." (Citation and punctuation omitted.) *Barrett*, 371 Ga. App. at 717 (1) (a). And even slight evidence giving rise to a triable issue of material fact will suffice to defeat summary judgment. See *Evans*, 359 Ga. App. at 802; *Peach Blossom Dev. Co.*, 300 Ga. App. at 269. In the instant case, it is clear that such evidence exists.

Viewing the evidence in the light most favorable to the Albrights, as we must in considering TICO's motion for summary judgment, "we conclude that the trial court erred by granting summary judgment to [TICO] rather than allowing the case to proceed to trial because material questions of fact exist in the record." (Citation and punctuation omitted.) *Barrett*, 371 Ga. App. at 717 (1) (a). Accordingly, we reverse the trial court's grant of summary judgment to TICO.

2. Based on our holding in Division 1, the trial court's grant of summary judgment to TICO on Patricia's derivative loss of consortium claim and the Albrights' OCGA § 13-6-11 attorney fee claim likewise must be reversed.

*Judgment reversed. Doyle, P. J., and Watkins, J., concur.*